**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **RAYMOND RICHARDSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Nos. 2:20-00573** |
| | ) | |
| **DONALD AMES, Superintendent,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 42), filed on December 10, 2021. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny in part and grant in part Respondent's Motion for Summary Judgment (Document No. 42) and deny in part and grant in part Petitioner's Amended Section 2254 Petition (Document No. 40). Concerning Petitioner's claim of ineffective assistance of counsel concerning Juror Hicks, the undersigned recommends that Respondent's Motion for Summary Judgment (Document No. 42) be **GRANTED** and Petitioner's Amended Section 2254 Petition (Document No. 40) be **DENIED**. Concerning Petitioner's claim of ineffective assistance of counsel concerning the constructive amendment of the Indictment, the undersigned recommends that Respondent's Motion for Summary Judgment (Document No. 42) be **DENIED** and Petitioner's Amended Section 2254 Petition (Document No. 40) be **GRANTED**.

## PROCEDURAL HISTORY

**A.    Criminal Action No. 03-F-103:**

On November 20, 2013, the Grand Jury of Kanawha County, West Virginia, returned an Indictment against Petitioner charging him with two counts of manufacturing, delivering and possessing with intent to deliver crack cocaine and cocaine, a Schedule II controlled substance, in violation of W. Va. Code § 60A-4-401 (Counts One and Five); one count of manufacturing, delivering and possessing with intent to deliver marijuana, a Schedule I controlled substance, in violation of W. Va. Code § 60A-4-401 (Count Two); one count first-degree robbery in violation of W. Va. Code § 61-2-12(a) (Count Three); and one count of assault during the commission of a felony in violation of W. Va. Code § 61-2-10 (Count Four). State v. Richardson, Case No. 13-F-806 (Cir. Ct. Kanawha Co. February 21, 2014); (Document No. 1-1, pp. 17, 23 – 25, 43.) Subsequently, Counts One and Two of the Indictment were dismissed. (Id., pp. 41 and 43.) On January 22, 2014, following two-day jury trial, Petitioner was convicted as to Counts Three, Four and Five. (Id.) On February 3, 2014, Petitioner filed a Motion for Judgment of Acquittal. (Id., p. 43.) By Order filed on February 24, 2014, the Circuit Court denied Petitioner's Motion for Judgment of Acquittal and sentenced Petitioner to consecutive terms of 100 years for first-degree robbery, two (2) to ten (10) years for assault during the commission of a felony, and one (1) to fifteen (15) years for assault during the commission of a felony, and one (1) to fifteen (15) years for possession with intent to deliver cocaine. (Id.) When imposing Petitioner's sentence, the Circuit Court explained as follows:

> I too have given a great deal of consideration as to what the appropriate sentence in a circumstance like this is and have not only done some research similar to yours as to what our Supreme Courts and District Courts have considered excessive, but I've also looked back over some of the sentences that I've handed

down. Just within the last couple of years a young man just in his teens was involved in a series of robberies and he was sentenced to 75 years for first degree robbery.

And he did not have any history anywhere approaching the history that you have, Mr. Richardson.

Mr. Richardson, I've watched you over the years and presided over the bulk of the charges that the prosecutor has mentioned and listened to the recitation of the facts of the crimes that you committed, and quite honestly I find you to be a very violent, dangerous man, and I don't say that lightly. But you are—you—the acts that you have committed have been heinous and torturous and unthinkable in the past, and that has to be a consideration in determining what the appropriate sentence in this case is.

State v. Richardson, 2016 WL 5030312, * 2 (W. Va. Sept. 16, 2016).

Petitioner, by counsel, Justin Collin, filed an appeal with the Supreme Court of Appeals of West Virginia ("SCAWV"). (Id., pp. 45 - 50.) In his appeal, Petitioner raised the following assignments of error:

1.  The trial court erred by denying Petitioner's motion for judgment of acquittal after the evidence failed to establish that a weapon was used during the assault.

2.  The prosecution failed to present sufficient evidence of an unlawful taking of $103.

3.  The victim's testimony is inherently incredible and that the testimony is insufficient to prove an unlawful taking beyond a reasonable doubt.

4.  Petitioner's sentence was disproportionate to the crimes committed.

(Id.) By a Memorandum Decision entered on September 16, 2016, the SCAWV affirmed Petitioner's conviction and sentence. State v. Richardson, 2016 WL 5030312 (W. Va. Sept. 16, 2016). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

On July 15, 2017, Petitioner, acting pro se, filed a Motion to Correct Sentence pursuant to Rule 35(a). (Document No. 10-3.) Petitioner argued that "[d]ue to the charging language in the defendant's indictment, said indictment is actually an indictment for 2nd Degree Robbery under

the guise of a 1st Degree Robbery." (Id.) On July 17, 2017, the Circuit Court filed its "Order Denying Motion to Correct Sentence." (Document No. 10-4.) Petitioner filed an appeal to the SCAWV. (Document No. 1-1, pp. 65 – 67.). By Memorandum Decision filed on March 9, 2018, the SCAWV affirmed the Circuit Court's Order denying Petitioner's Motion for Correction of Sentence pursuant to Rule 35(a). (Id.); State v. Richardson, 2018 WL 1225535 (W. Va. March 9, 2018). The SCAWV issued its Mandate on April 10, 2018. (Document No. 1-1, p. 88.)

**B.     First State *Habeas* Petition:**

On October 6, 2017, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. Richardson v. Ballard, Case No. 17-P-382 (Cir. Ct. Kanawha Co.); (Document No. 10-7.). As grounds for relief, Petitioner asserted the following:

1.     Trial counsel as ineffective in failing to adequately investigate the case.

    a.     Trial counsel was ineffective in failing to investigate the personal relationship between the jury foreman and the prosecuting attorney.

    b.     Trial counsel was ineffective in failing to investigate or object to the impermissible, literal, constructive amendment of the robbery count of the indictment.

2.     Trial counsel failed to conduct an effective cross examination.

3.     Trial counsel consciously and deliberately permitted the State to advance a theory of the "taking of the money" during the robbery premised on perjury, despite the State's expressed affirmative recognition that both theories were unknown to the State without objections.

4.     Trial counsel failed to identify or challenge the trial court's instructions to the jury on robbery that there was no instruction defining what constitutes a robbery or its elements, or gave an instruction on intent.

5.     Trial counsel was ineffective for failing to request a 404(b) evidentiary instruction on realizing that the trial court did not do the required balancing under Rule 403.

6.      Trial counsel was ineffective for failing to object to the State's testimony from Denise Cool, which was inconsistent and had not been timely disclosed.

7.      Trial counsel failed to object to the State's prejudicial characterization of Mr. Richardson as being a drug dealer, who sold drugs to Denise Cool for over a year, which assertion was not in evidence.

8.      Trial counsel was ineffective for conducting a haphazard voir dire, largely ignoring issues of jury foreperson Ashley Hicks' personal relationship with Assistant Prosecutor Bailey and if jurors held any racial bias.

9.      Trial counsel failed to object to the Court's instruction regarding robbery in that it did not contain all the essential elements constituting robbery.

10.     Petitioner's State and Federal constitutional rights were violated:

   a.      When appellate counsel ineffectively failed to bring forth the trial court's erroneous robbery instruction invoking the plain error rule.

   b.      By the impermissible, literal, constructive amendment of the robbery count of the indictment.

   c.      By jury foreman's misconduct.

   d.      By Petitioner's wrongful arrest.

   e.      By the Prosecuting Attorney knowingly allowing material false testimony at trial and failing to step forward and make the falsities known, and exploiting the falsities in his closing argument.

   f.      When the State induced and procured false eyewitness testimony during the preliminary hearing.

   g.      Due to a defective indictment procured by false and misleading testimony before the grand jury.

   h.      Due to a fatally defective indictment because it failed to charge defendant with the crime of robbery.

   i.      The State's non-disclosure of favorable impeachment evidence in violation of *Brady* and its progeny.

   j.      By the effects of cumulative error.

       k.      All additional grounds which may become apparent upon further investigation of his matter.

(Id.) Subsequently, Matthew Victor was appointed has *habeas* counsel for Petitioner. (Document No. 10-10, p. 19.) On January 28, 2018, Petitioner, by counsel, filed an Amended Petition asserting the following grounds for relief:

1.      The Petitioner received ineffective assistance of counsel.

2.      Under the plain error analysis, the trial court erred by giving an incomplete and incorrect instruction on first-degree robbery.

3.      Under the plain error analysis, the trial court erred by admitting unduly prejudicial West Virginia Rules of Evidence, Rule 404(b) evidence.

4.      Under the plain error analysis, the Petitioner's conviction was obtained by an impressible variance in proof between the charges contained in the Indictment and the evidence adducted at trial resulting in a constructive amendment of Indictment.

5.      There was insufficient evidence to convict the Petitioner on all charges.

6.      The State of West Virginia obtained the conviction on all counts against the Petitioner by use of false and/or misleading testimony of the witness with the State of West Virginia's tacit acquiescence to the same.

7.      The State of West Virginia obtained the Indictment against the Petitioner by use of false and/or misleading testimony.

8.      Under the plain error analysis, the trial court erred by providing an unduly suggestive comment to the jury result in the Petitioner's conviction on the count of possession with intent to deliver cocaine.

9.      The trial court erred by sentencing the Petitioner to a constitutionally prohibited excessive sentence.

10.     The cumulative error in the trial court proceedings deprived the Petitioner of his due process right to a fair trial.

(Document No. 10-8.) On June 27, 2018, Petitioner supplemented his Petition by adding an

additional jury instruction error. (Document No. 10-9.) Specifically, Petitioner claimed that "[t]he trial court erroneously instructed the jury regarding the 'beyond reasonable doubt' standard and the Petitioner's counsel was ineffective for failing to object to the constitutionally defective instruction." (Id.) The Circuit Court conducted an omnibus hearing on August 2, 2018. (Document No. 10-10, p. 20.) The Circuit Court heard testimony from the following: (1) Justin Collins, Petitioner's trial counsel; and (2) Petitioner. (Id.) On October 24, 2018, the Circuit Court entered its "Final Order" denying Petitioner's Amended *habeas* Petition. (Document No. 10-10.)

On November 14, 2018, Petitioner, by counsel, Matthew A. Victor, filed his Notice of Appeal concerning the Circuit Court's decision denying his *habeas* Petition. (Document No. 1-6, pp. 43.) Petitioner raised the same eleven assignment of error he made before the Circuit Court. (Document No. 10-11.) On May 10, 2019, the State filed its "Response Brief." (Document No. 2-6, pp. 46 – 73 and Document No. 1-7.) By Memorandum Decision filed on July 30, 2020, the SCAWV affirmed the decision of the Circuit Court. (Document No. 10-11.); Richardson v. Ames, 2020 WL 4354920 (W. Va. July 30, 2020).

## C.    **Second State *Habeas* Petition:**

On August 23, 2019, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. Richardson v. Ames, Case No. 19-P-342 (Cir. Ct. Kanawha Co.); (Document No. 10-13.). As grounds for relief, Petitioner asserted the following: "Newly discovered evidence. Brady violation by State for withhold additional alias and criminal conviction of Denise Cool that were ordered to be turned over in discovery material." (Id.) By "Final Order" filed on October 3, 2019, the Circuit Court denied and summarily dismissed Petitioner's Petition. (Document No. 10-14.) Petitioner filed an appeal to the SCAWV concerning

the Circuit Court's decision denying his *habeas* Petition. (Document No. 10-15.) By Memorandum

Decision filed on November 4, 2020, the SCAWV affirmed the decision of the Circuit Court.

<u>Richardson v. Ames</u>, 2020 WL 6482782 (W. Va. Nov. 4, 2020).

**D.    Section 2254 Petition:**

On August 31, 2020, Petitioner, acting *pro se*, filed his Petition Under 28 U.S.C. § 2254

for Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 1.) As grounds for

*habeas* relief, Petitioner asserted the following:

1.    Petitioner's state and federal constitutional rights were violated by the ineffective assistance of trial counsel:

    A.    Trial counsel was ineffective in failing to investigate the personal relationship between the jury foreman and the prosecuting attorney.

    B.    Trial counsel was ineffective in failing to investigate or object to the impermissible, literal, constructive amendment of the robbery count of the indictment.

    C.    Trial counsel failed to conduct an effective cross-examination.

    D.    Trial counsel consciously and deliberately permitted the State to advance a theory of the "taking of the money" during the robbery premised on perjury, despite the State's expressed affirmative recognition that both theories were unknown to the State without any objections.

    E.    Trial counsel failed to identify or challenge the trial court's instructions to the jury on robbery that there was no instruction defining what constitutes a robbery or its elements, or gave an instruction on intent.

    F.    Trial counsel was ineffective for failing to request a 404(B) evidentiary instruction on realizing that the trial court did not do the required balancing under Rule 403.

    G.    Trial counsel was ineffective for failing to object to the State's testimony from Denise Cool, which was inconsistent and had not

been timely disclosed.

H.    Trial counsel failed to object to the State's prejudicial characterization of [Petitioner] as being a drug dealer, who sold drugs to Denise Cool for over a year, which assertion was not in evidence.

I.    Trial counsel was ineffective for conducting a haphazard voir dire, largely ignoring issues of jury foreperson Ashley Hicks' personal relationship with Assistant Prosecutor Bailey and if jurors held any racial bias.

J.    Trial counsel failed to object to the Court's instruction regarding robbery in that it did not contain all the essential elements constituting robbery.

2.    Petitioner's state and federal constitutional rights were violated when appellate counsel ineffectively failed to bring forth the trial court's erroneous robbery instruction involving the plain error rule.

3.    Petitioner's state and federal constitutional rights were violated by the impermissible, literal, constructive amendment of the robbery count of the indictment.

4.    Petitioner's state and federal constitutional rights were violated by jury foreman's misconduct.

5.    Petitioner's state and federal constitutional rights were violated by his wrongful arrest.

6.    Petitioner's state and federal constitutional rights were violated by the Prosecuting Attorney knowingly allowing materially false testimony at trial and failing to step forward and make the falsities known, and exploiting the falsities in his closing argument.

7.    Petitioner's state and federal constitutional rights were violated when the State induced and procured false eyewitness testimony during the preliminary hearing.

8.    Petitioner's state and federal constitutional rights were violated due to a defective indictment procedure by false and misleading testimony before the grand jury.

9.    Petitioner's state and federal constitutional rights were violated due to a

9

fatally defective indictment because it failed to charge [Petitioner] with the crime of robbery.

10.    Under *Brady* and its progeny, the Petitioner's federal and state constitutional rights were violated by the State's non-disclosure of favorable impeachment evidence.

11.    Petitioner's state and federal constitutional rights were violated by the effects of cumulative error.

12.    Petitioner also asserts all additional grounds which may become apparent upon further investigation of this matter.

(Document No. 1-1, pp. 1 – 10.)

As Exhibits, Petitioner attached the following: (1) A copy of a letter dated January 5, 2015, from the Judicial Investigation Commission (Id., p. 14.); (2) A copy of a dismissal letter dated May 30, 2014, from the Judicial Investigation Commission concerning Complaint No. 50-2014 (Id., p. 15.); (3) A copy of a letter from the Kanawha County Office of the Prosecuting Attorney dated April 25, 2018, concerning Petitioner's Freedom of Information Act request (Id., p. 16.); (4) A copy of Petitioner's Indictment (Id., pp. 17, 23 - 25.); (5) A copy of Petitioner's "Motion for Leave to File Supplemental Grounds to Petitioner's Amended Petition for Writ of Habeas Corpus" as filed in the Circuit Court of Kanawha County in Case No. 17-P-382 (Id., pp. 18 – 22.); (6) A copy of pertinent jury instructions (Id., pp. 26 – 40.); (7) A copy of the Jury Verdict Form (Id., pp. 41 – 42.); (8) A copy of the Docket Sheet for Case No. 13-F-806 (Id., pp. 43 – 44.); (9) A copy of the SCAWV's Memorandum Decision filed on September 16, 2016, affirming Petitioner's conviction and sentence (Id., pp. 45 – 50.); (10) A copy of Petitioner's "Motion for Arrest of Judgment" as filed in Case No. 13-F-806 (Id., pp. 51 – 57.); (11) A copy of Petitioner's "Motion for Formal Demand that the Defendant's Motion for Arrest of Judgment Filed with the Court be Heard and Adjudicated" as filed in Case No. 13-F-806 (Id., pp. 58 – 64.); (12) A copy of the SCAWV's

Memorandum Decision as filed on March 9, 2018, affirming the Circuit Court's Order denying Petitioner's motion for correction of sentence pursuant to Rule 35(a) (Id., pp. 65 – 67.); (13) A copy of Petitioner's Reply Brief as filed with the SCAWV concerning his appeal of the Circuit Court's Order denying his motion for correction of sentence (Id., pp. 68 – 86.); (14) A copy of the Circuit Court's Order entered on July 6, 2017, denying Petitioner's motion for correction of sentence (Id., p. 87.); (15) A copy of the SCAWV's Mandate as entered on April 10, 2018 (Id., p. 88.); (16) A copy of Petitioner's "Motion for Leave to Supplemental Grounds to Amended Petition for Writ of Habeas Corpus" as filed in Case No. 17-P-382 (Document No. 1-2, pp. 1 – 4.); (17) A copy of the SCAWV's Memorandum Decision filed on July 30, 2020, affirming the Circuit Court's decision denying *habeas* relief (Id., pp. 5 – 10.); (18) A copy of Petitioner's "Losh Checklist" as filed in Case No. 17-P-382 (Id., pp. 11 – 16.); (19) A copy of pertinent arguments asserted in Case No. 17-P-382 (Id., pp. 18 – 71, Document No. 1-3, pp. 4 -50, Document No. 1-4, pp. 1 – 7, 15 – 20; Document No. 1-5, pp. 1 – 19, 29 – 63; Document No. 1-6, pp. 1 - 37.); (20) A copy of a letter dated September 26, 2016, from the Petitioner addressed to Public Defender Justin Collin (Document No. 1-2, p. 72.); (21) A copy of a letter dated September 29, 2016, from the Public Defender Collin addressed to Petitioner (Id., p. 73.); (22) A copy of letters dated November 11, 2016, from Petitioner addressed to Public Defender Collin (Id., pp. 74 – 75.); (23) A copy of Facebook messages between Natalie Boyle and Robert Arrington (Document No. 1-3, pp. 1 – 3 and Document No. 1-4, pp. 20 - 23.); (24) A copy of pertinent articles from Criminal Legal News (Document No. 1-4, pp. 8 – 12.); (25) A copy of what appears to be Petitioner's legal research (Id., pp. 12 – 14; Document No. 1-5, pp. 20 – 28, Document No. 1-12, pp. 22 - 30.); (26) A copy of a letter dated January 13, 2017, from Public Defender Collin addressed to Petitioner (Document No.

1-4, pp. 24 – 25.); (27) A copy of James Bailey and Ashley Noland's Facebook Profiles (Id., pp. 26 – 30.); (28) A copy of an article about Sean Noland (Id., pp. 31 – 33.); (29) A copy of information about Sean Noland from Linkin (Id., p. 34.); (30) A copy of information about Shley Noland (Id., p. 35.); (31) A copy of the Circuit Court's "Order Appointing Counsel and Setting Briefing Scheduled" as filed in Case No. 17-P-382 (Document No. 1-6, pp. 38 – 39.); (32) A copy of Assistant Attorney General Elizabeth D. Grant's "Notice of Appearance" as filed with the SCAWV in Case No. 18-0999 (Id., pp. 40 – 42.); (33) A copy of the SCAWV's "Scheduling Order" as filed in Case No. 18-0999 (Id., pp. 43 – 44.); (34) A copy of the SCAWV's Order as filed in Case No. 18-0999 granting Petitioner's motion to seal certain documents (Id., p. 45.); (35) A copy of the State's "Response Brief" as filed with the SCAWV in Case No. 18-0999 (Id., pp. 46 – 73 and Document No. 1-7.); (36) A copy of Petitioner's Appendix Volumes I – IV as filed with the SCAWV in Case No. 18-0999 (Document Nos. 1-8, 1-9, 1-10, 1-11, 1-12, pp. 1 – 5.); (37) A copy of State v. Rollins, 142 W.Va. 118 (1956) (Document No. 1-12, pp. 6 -11.); (38) A copy of State v. Johnson, 219 W.Va. 697 (2006) (Id., pp. 12 – 21.); (39) A copy of information on Denise Cool (Id., pp. 31 – 39.); and (40) A copy of two DVDs (Document Nos.7 and 9.).

By Order entered September 4, 2020, the undersigned directed Respondent to file a Response to Petitioner's Petition. (Document No. 6.) On October 15, 2020, Respondent filed his "Motion to Dismiss Without Prejudice or to Stay Due to Petitioner's Failure to Exhaust his State Remedies" and Memorandum in Support thereof with Exhibits. (Document Nos. 10 - 11.) Specifically, Respondent argued that Ground 10 of Petitioner's Petition was unexhausted. (Document No. 11.) Respondent, therefore, requested that Petitioner's Petition be dismissed without prejudice, or in the alternative, stayed pending full exhaustion. (Id.)

12

As Exhibits, Respondent filed the following: (1) A copy of the Docket Sheet for Case No. 13-F-806 (Document No. 10-1.); (2) A copy of the SCAWV's Memorandum Decision in Case No. 14-0382 (Document No. 10-2.); (3) A copy of Petitioner's Rule 35 Motion as filed in Case No. 13-F-806 (Document No. 10-3.); (4) A copy of the Circuit Court's Order denying Petitioner's Rule 35 Motion as filed in Case No. 13-F-806 (Document No. 10-4.); (5) A copy of the SCAWV's Memorandum Decision in Case No. 17-0850 (Document No. 10-5.); (6) A copy of the Docket Sheet for Case No. 17-P-382 (Document No. 10-6.); (7) A copy of Petitioner's *habeas* Petition as filed in Case No. 17-P-382 (Document No. 10-7.); (8) A copy of Petitioner's Amended Petition as filed in Case No. 17-P-382 (Document No. 10-8.); (9) A copy of Petitioner's Supplemental Petition as filed in Case No. 17-P-382 (Document No. 10-9.); (10) A copy of the Circuit Court's Final Order denying Petitioner's *habeas* petition as filed in Case No. 17-P-382 (Document No. 10-10.); (11) A copy of the SCAWV's Memorandum Decision as filed in Case No. 18-0999 (Document No. 10-11.); (12) A copy of the Docket Sheet for Case No. 19-P-342 (Document No. 10-12.); (13) A copy of Petitioner's *habeas* Petition as filed in Case No. 19-P-342 (Document No. 10-13.); (14) A copy of the Circuit Court's Final Order denying Petitioner's *habeas* petition as filed in Case No. 19-P-342 (Document No. 10-14.); and (15) A copy of Petitioner's Petition for Appeal as filed with the SCAWV in Case No. 19-0974 (Document No. 10-15.).

On October 16, 2020, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of the right to file a response to Respondent's "Motion to Dismiss Without Prejudice or to Stay Due to Petitioner's Failure to Exhaust his State Remedies." (Document No. 12.) On October 21, 2020, Petitioner filed his "Motion for Leave to File Supplemental Grounds to Petitioner's Petition for Writ of Habeas Corpus." (Document No.

13.) Specifically, Petitioner stated that he wished to supplement his Petition to include the following: (1) "The grounds and argument contained in Petitioner's Amended Petition;" and (2) "The face of the indictment showed no crime was committed (insufficient)." (Id.) As Exhibits, Petitioner attached the following: (1) A copy of what appeared to be the arguments contained in his Amended Petition (Id., pp. 8 - 51.); and (2) A copy of his argument that "the face of the indictment shows no crimes were committed and insufficient for the first-degree robbery and assault during the commission of a felony" (Id., pp. 4 – 7.). On October 29, 2020, Petitioner filed his Response in Opposition to Respondent's Motion to Dismiss and "Memorandum of Law in Support of Petitioner's Motion in Response and Motion for Summary Judgment." (Document Nos. 16 and 17.)

By Order entered on March 30, 2021, the undersigned directed Respondent to file a Response to Petitioner's "Motion for Leave to File Supplemental Grounds to Petitioner's Petition for Writ of Habeas Corpus." (Document No. 18.) On April 27, 2021, Respondent filed his Response to Petitioner's "Motion for Leave to File Supplemental Grounds to Petition for Writ of Habeas Corpus." (Document No. 19.) Specifically, Respondent conceded Petitioner had now fully exhausted his claims, Petitioner should be granted leave to supplement his Petition, and Respondent's Motion to Dismiss should be denied as moot. (Id.)

By Proposed Findings and Recommendations ("PF&R") entered on May 7, 2021, the undersigned recommended that the District Court deny as moot Respondent's "Motion to Dismiss Without Prejudice or to Stay Due to Petitioner's Failure to Exhaust his State Remedies" (Document No. 10) and Petitioner's Motion for Summary Judgment (Document No. 17), and refer the matter back to the undersigned for further proceedings. (Document No. 21.) By Order also

entered on May 7, 2021, the undersigned granted Petitioner's "Motion for Leave to File Supplemental Grounds to Petitioner's Petition for Writ of Habeas Corpus." (Document No. 22.) Specifically, the undersigned directed Petitioner to file his Amended Section 2254 Petition by June 7, 2021. (Id.) Petitioner filed Objections on May 24, 2021. (Document No. 24.) On June 17, 2021, Petitioner filed a Motion for Appointment of Counsel. (Document No. 29.) By Order entered on June 21, 2021, the undersigned granted Petitioner's Motion for Appointment of Counsel and directed that appointed counsel file an Amended Petition on Petitioner's behalf by August 9, 2021. (Document No. 30.) The undersigned noted that "[t]his Amended Petition will supersede all prior Petitions filed by Petitioner, acting *pro se*." (Id.) By Memorandum Opinion and Order entered on July 20, 2021, United States District Judge John T. Copenhaver, Jr. overruled Petitioner's Objections to the undersigned's PF&R and Order granting Petitioner's "Motion for Leave to File Supplemental Grounds to Petitioner's Petition for Writ of Habeas Corpus," adopted the undersigned's PF&R, and denied as moot Respondent's Motion to Dismiss and Petitioner's Motion for Summary Judgment. (Document Nos. 34 and 37.)

On October 15, 2021, Petitioner, by counsel, Jonathan Byrne, Assistant Federal Public Defender, filed an "Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254" and Memorandum in Support. (Document Nos. 40 and 41.) As grounds for relief, Petitioner argued that he was denied his Sixth Amendment right to effective assistance of counsel during his underlying criminal trial based on the following:

A.    Trial counsel was ineffective for failing to object to a fatal variance between the indictment – which charged Richardson with committing robbery via the threat of deadly force – and the proof and instructions at trial which allowed him to be convicted based on the actual use of physical force.

B.    Trial counsel was ineffective for failing to more fully investigate the

ongoing relationship between a juror and one of the prosecutors, who were
friends since high school and continued to be friends on social media.

(Id.) As Exhibits, Petitioner attached the following: (1) A copy of Petitioner's underlying

Indictment (Document No. 40-1); (2) A copy of the trial transcript (Document Nos. 40-2 and 40-

3).

On December 10, 2021, Respondent filed his "Motion for Summary Judgment" and

Memorandum in Support. (Document Nos. 42 and 44.) Specifically, Respondent argues that

Petitioner's Amended Petition should be dismissed based on the following: (1) "Counsel was not

ineffective in failing to object to a fatal variance, as a fatal variance did not exist in this matter"

(Document No. 44, pp. 16 – 18.) and (2) "Counsel was not ineffective in failing to further inquire

of Juror A.H. as Petitioner's claim that she had implied bias is baseless" (Id., pp. 18 – 22.).

Petitioner filed his Response in Opposition on December 23, 2021. (Document No. 46.)

Specifically, Petitioner argues as follows: (1) "That Cool testified [Petitioner] threatened her does

not mean that the argument and instructions did not broaden the bases on which [Petitioner] could

be convicted of robbery" (Id., pp. 1 – 5.); and (2) "Juror Hicks' false answer during *voir dire* that

she had no ongoing friendship with one of the prosecutors is sufficient to call her impartiality into

question" (Id., pp. 5 – 7.).

## **FACTUAL BACKGROUND**

The parties do not appear to dispute the SCAWV's summary of the factual background

concerning the alleged offense committed by Petitioner. Specifically, the SCAWV summarizes the

background as follows:

During the early morning hours of August 24, 2013, petitioner attacked the
sixty-one year old victim in her home. Petitioner went to the victim's home to sell
her cocaine. The victim characterized her cocaine use as a "daily habit." Before the

attack, petitioner, a thirty-five year old man, had sold the victim cocaine for over a year. The two frequently communicated via cell phone to arrange drug transactions. The victim's testimony at trial indicated that in the week leading up to the attack, the cocaine she purchased from petitioner was sometimes cut with baking soda.

On the evening before the attack, the victim and petitioner agreed to meet at a bar in South Charleston. At the bar, the victim bought $200 worth of what she thought was powder cocaine from petitioner and returned home. The victim later testified that the cocaine product was inferior and that it was mostly baking soda. That night, petitioner repeatedly called the victim. The victim ignored his calls until around 2:00 o'clock in the morning when he called to tell her that he would make up for selling her bad cocaine. At that time, the victim told petitioner that she was going to bed. Later that same morning, petitioner called the victim and then woke her up by knocking on her door. Once inside, petitioner offered the victim $200 worth of crack cocaine. She told him that it was trash and threw it on the kitchen table. Petitioner told the victim that he needed money in order to travel out of state and "re-up," so he told the victim that she needed to pay him for the product that she destroyed. An argument escalated at the victim's house when she demanded that petitioner leave. The victim testified that petitioner proceeded to punch the victim in the face. Petitioner continued to hit her even after she fell to the floor. The victim later testified that $103 she had earned in tips the previous night was taken by petitioner.

After petitioner left the victim's home, she called 911. The police responded to the scene but she lied to them about the drug transaction and the identity of her attacker. Later, at trial, she explained that she lied because she was embarrassed by her addiction, which she had hidden from her children and customers at a local pizza parlor, some of whom were the policemen who responded to her 911 call.

Once at the hospital, the victim eventually admitted the truth to Detective Gordon about her drug addiction and the identity of her attacker. Detective Gordon conducted a follow-up interview at the victim's home and made a video of the scene. The victim indicated that the money she kept hidden in her closet, as well as the money in her purse, was not missing. Days after the interview with Detective Gordon, the victim contacted Gordon to tell him that she realized that $103 in tip money had been taken from her ironing board on the morning of the attack. At trial, the victim testified that she heard petitioner grab the cash from her ironing board when she was on the floor after the attack.

On August 28, 2013, petitioner was arrested and detectives executed a search of his home, where they found cash and a shirt stained with a substance that looked like blood. After his arrest, petitioner was interviewed by two detectives and admitted to selling the victim drugs. Petitioner initially denied that he had been at the victim's house the morning of the attack, but later admitted to being in her home. Petitioner told the detectives at first that the victim fell, but later admitted to hitting her. Throughout the interview, petitioner insisted that he did not rob the victim. Petitioner was tried and the jury returned a guilty verdict on all three offenses.

Richardson, 2016 WL 5030312, at * 1 – 2.

## **THE APPLICABLE STANDARDS**

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To trigger the above AEDPA deference, a State Court's decisions must be "adjudicated on the merits." Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015)(If the State court's decision does not qualify as an "adjudication on the merits," AEDPA deference is not triggered and the Court must review the issue *de novo*.). A claim is "adjudicated on the merits" if the claim "is exhausted in state court and not procedurally defaulted." Gray v. Zook, 806 F.3d 783, 798 (4th Cir. 2015)(citation omitted); also see Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)(explaining that a claim has been adjudicated upon the merits where the claim was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, United States v. Barnett, 644 F.3d 192 (4th Cir. 2011)(Exhaustion requires that a claim be "fairly

presented," such that the claim was presented face-up and squarely, providing an opportunity for review by the highest state court.) It is a case-specific inquiry as to whether a claim has been "adjudicated on the merits," but a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" Braxton, 780 F.3d at 202 (citing Winston v. Kelly (Winston I), 592 F.3d 535, 544 (4th Cir. 2010)(The record may be materially incomplete if a state court "unreasonably refuses to permit further development of the facts.") The Fourth Circuit has explained that where a state court "unreasonably refuses to permit further develop of the facts," it passes up the opportunity that exhaustion ensures. Winston v. Pearson (Winston II), 683 F.3d 489, 496 (4th Cir. 2012)(exhaustion requires that a state court have an opportunity to apply the law and consider all relevant evidence to petitioner's claim). Additionally, the "adjudication on the merits" requirement does not exclude "claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999); also see Winton II, 683 F.3d at 502(discussing Harrington v. Richter, 562 U.S 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)(noting that although a state court's summary denial may be presumed an "adjudication on the merits," a federal court may still find that the state court did not adjudicate a claim on the merits if the thoroughness of the state court's development of the record is challenged and there was a materially incomplete record before the state court.) When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). The Court, however, must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States.'" Id. at 158; also see Harrington, 562 U.S at 98 – 99, 131 S.Ct. at 770("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. 312, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(*per curiam*)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S at 103, 131 S.Ct. at 770. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state

20

court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[1] On this framework, consideration should be given to the Motions for Summary Judgment.

### Motion for Summary Judgment:

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts

---

[1] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support non-moving party's claims, summary judgment is appropriate.

## **ANALYSIS**

1. **Ineffective Assistance of Counsel**:

The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. <u>Id.</u> Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. <u>Id.</u> at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. <u>Id.</u> at 689, 104 S.Ct. at 2065. Thus, a petitioner

challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Where the State court applies the Strickland standard in the adjudication of a petitioner's ineffective assistance of counsel claim, the standard of review in a Section 2254 proceeding differs from the standard used in the direct review of a Strickland challenge. The United States Supreme Court has explained as following:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This differs from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

Harrington, supra, 562 U.S. at 101, 131 S.Ct. at 785. The Supreme Court acknowledged that "[s]urmounting *Strickland's* high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." Id., 562 U.S. at 105, 131 S.Ct. 788("The standards created by *Strickland* and § 2254(d) are both 'highly deferential," and when the two apply in tandem, review is 'doubly' so."); also see Woods, supra, 575 U.S. at 315, 135 S.Ct. at 1376(For claims of ineffective assistance of counsel, "AEDPA review

must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt.")(internal quotations omitted). The Supreme Court warned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." Harrington, supra, 562 U.S. at 105, 131 S.Ct. 788. Under Section 2254(d), "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." Id., 562 U.S. at 101, 131 S.Ct. at 785. To obtain *habeas* relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., 562 U.S. at 103, 131 S.Ct. at 787. Applying these standards, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

**A.    Counsel's failure regarding a fatal variance between Petitioner's Indictment and his conviction.**

In his Amended Petition, Petitioner argues that "[t]rial counsel was ineffective for failing to object when the State's argument and evidence at trial, as well as the trial court's instructions, created a fatal variance between the version of robbery [Petitioner] was charged with committing and the version of the offense of which the jury convicted him." (Document No. 41, pp. 8 – 14.) Petitioner contends that he "was charged with one form of robbery, while the proof at trial and the trial court's instructions to the jury allowed for his conviction of another form of robbery, creating a fatal variance to which trial counsel should have objected." (Id., p. 9.) Petitioner explains that

24

W. Va. Code § 61-2-12(a) provides for two forms of first-degree robbery: (1) Robbery committed by "[c]omitting violence to the person, including, but not limited to, partial strangulation or suffocation;" and (2) Robbery committed by the use of "the threat of deadly force by presenting a firearm or other deadly weapon." (Id., p. 10.) Petitioner notes that he was charged in Count Three of the Indictment with committing robbery when he used "the threat of deadly force upon the person of Denise Cool." (Id.) Petitioner argues that the Indictment "did **not** charge [Petitioner] with the actual use of force as a means of committing robbery." (Id.) Petitioner, however, complains that the evidence at trial adduced that Petitioner committed robbery only by the actual use of force and not by the threat of deadly force. (Id.) Specifically, Petitioner states that the only evidence against him was that he punched the victim in the face and continued to hit her in the head after she fell to the floor. (Id.) Petitioner asserts there is no testimony or evidence that he threatened the use of deadly force. (Id.) Petitioner further complains that the jury instruction advised the jury that Petitioner could be found guilty because he employed "partial strangulation or suffocation or by striking or beating" or by the "presenting of firearms, or by other deadly weapon or instrumentality." (Id.) Petitioner claims that his "trial was the classic example of a variance between the charge and proof." (Id.) Specifically, Petitioner states the trial court's instructions . . . allowed the jury to convict [Petitioner] on the theory of the case not charged in the Indictment." (Id., p. 11.) Petitioner further argues that the "variance was fatal because it 'infringed [the defendant's] substantial rights and thereby resulted in actual prejudice.'" (Id.) Petitioner explains "prejudice is evident from the fact that the State never produced sufficient evidence that [Petitioner] committed the offense actually charged in the Indictment." (Id.) Petitioner argues that if the trial court would have properly instructed the jury, he would have been acquitted because

there was no evidence that he threatened the use of force with a deadly weapon. (Id.)

Next, Petitioner argues that the "trial court unreasonably applied settled federal law when it concluded that even if a variance had occurred the State 'could have easily presented the case to the grand jury once again or been given leave to add the words 'by violence to the person.'" (Id., p. 12.) Respondent argues that this is incorrect. (Id.) Respondent explains that a fatal variance arises when there is discontinuity between the indictment and the proof adduced at trial. (Id.) Thus, Respondent notes that a variance cannot become apparent until after evidence has begun to be received and at this point, a defendant's right to protection against Double Jeopardy has attached. (Id.) Respondent concludes that "[r]eturning to the grand jury at the point the variance becomes evident would have required a mistrial, caused the State's need to fix its own mistake, which likely would have prevented any subsequent retrial." (Id.) Petitioner also argues that the fact that Petitioner was charged in another count of the Indictment with assault of the victims, such "does not mitigate the prejudice of the fatal variance." (Id., p. 12.) Finally, Petitioner argues that "[t]he trial court's conclusion that [Petitioner's] defense was not impacted by the variance because it was focused on whether the money was taken (and thus whether a robbery occurred), rather than the type of force used, highlights the nature of trial counsel's ineffectiveness." (Id., p. 13.) Petitioner states that "[h]ad trial counsel recognized the variance issue he could have object to the trial court's instructions allowing the jury to convict on either basis or sought acquittal with the argument that the State never proved that [Petitioner] used a weapon." (Id.) Petitioner argues that trial counsel's failure to object to the fatal variance was not objectively reasonable. (Id.) Petitioner also asserts that trial counsel's failure was "prejudicial because there was insufficient evidence to convict [Petitioner] of the offense he was actually charged with committing." (Id.) Petitioner concludes

that "[t]he trial court unreasonably applied federal law by concluding otherwise." (Id.)

In his Motion for Summary Judgment, Respondent argues that trial "counsel was not ineffective in failing to object to a fatal variance, as a fatal variance did not exist in this matter." (Document No. 42 and Document No. 44, pp. 16 – 18.) Respondent acknowledges that the Indictment charged that Petitioner "did unlawfully and feloniously use the threat of deadly force upon the person of Denise Cool." (Id., p. 16.) Respondent, however, contends that the evidence presented at trial supported this charge. (Id.) Specifically, Respondent notes that the victim testified as follows: (1) Petitioner threatened to "kill" her or have someone else harm or kill her; and (2) She was in fear of death following the beating. (Id.) Next, Respondent argues that "[e]ven if there was some amendment in this case, the WVSCA properly found that the amendment was merely an amendment of form, not a fatal variance." (Id., p. 17.) Respondent states that "the indictment properly informed Petitioner he was charged with first-degree robbery as well as assault during the commission of a felony, making Petitioner well aware that evidence of him causing bodily harm to the victim would be presented." (Id.) Respondent further claims that Petitioner was not subjected to an added burden of proof or "surprised or hindered in his defense." (Id.) Respondent concludes that "Petitioner has shown no prejudice in this matter." (Id.) Therefore, Respondent argues that Petitioner's claim must failed because he "has not shown that the WVSCA opinion regarding any possible variance in this case was an unreasonable application of federal law or an unreasonable application of the facts to the relevant law." (Id., p. 18.) Respondent further argues that "Petitioner has failed to prove that he suffered ineffective assistance of counsel because counsel had no valid basis to object to the variance, as it was not fatal." (Id.) Respondent explains that Petitioner was not prejudiced by trial counsel's failure to object because "any objection would

have been fruitless." (Id.)

In Response, Petitioner argues that Cool's testimony that Petitioner "threatened her does not mean that the argument and instructions did not broaden the bases on which [Petitioner] could be convicted of robbery." (Document No. 46, pp. 1 - 5.) Petitioner argues that the "evidence, argument, and instructions presented to the jury allowed it to find [Petitioner] guilty on a theory of robbery that had not been charged in the indictment." (Id., p. 2.) Petitioner explains that Cool's testimony "detailed how [Petitioner] used actual violence against her" and the "state focused on actual violence in its arguments to the jury." (Id.) More importantly, Petitioner argues that the "trial court instructed the jury that it could find [Petitioner] guilty either because he employed 'partial strangulation or suffocation or by striking or beating' or by the 'presenting of firearms, or by other deadly weapon or instrumentality." (Id.) Petitioner notes that "when setting forth the elements of the offense of robbery, the only means of committing the offense was by 'committing violence against Denise Cool.'" (Id.) Next, Petitioner acknowledges that Cool testified that Petitioner threatened to kill her during the beating and threatened that if she told anyone about the attack he or his associates would "come back and kill me." (Id., p. 3.) Petitioner argues that "a threat of violence in the moment could be sufficient to constitute robbery, a threat of future violence would not." (Id.) Petitioner notes that "[u]nlike the evidence of actual violence,[2] the only evidence of threats of violence came from Cool's testimony and thus could only be credited if she

---

[2]  Petitioner admits that the evidence of actual violence was strong based on the following evidence presented at trial: (1) Cool testified that Petitioner beat her during the incident; (2) The State introduced photographs of Cool taken before she went to the hospital that showed she had been injured; (3) The State introduced photographs of Cool's apartment showing the bloody aftermath of the incident; and (4) Petitioner gave a statement admitting to being at the scene and hitting Cool. (Document No. 46, p. 3.)

was credible." (Id., 4.) Petitioner claims that Cool was not credible because she made conflicting statements. (Id., pp. 4 – 5.) Petitioner explains that Cool initially told police on the night of the assault that she had nothing to do with the drugs, she could not identify her attacker, and she failed to report any missing money. (Id., p. 4.) Subsequently, Petitioner continued to deny that anything had been taken from her apartment during a follow-up interview. (Id., pp. pp. 4 – 5.) A few days after the follow-up interview, Petitioner reported that money was missing. (Id., p. 5.) At trial, Petitioner testified that she "heard [Petitioner] grab the cash from her ironing board when she was on the floor after the attack." (Id.) Petitioner, however, admitted that she initially testified during a preliminary hearing that she saw Petitioner take the money "through the blood dripping down" her face. (Id.) Petitioner again notes that "the only mention of threats in the instructions to the jury was 'by the threat of presenting of firearms, or by other deadly weapon or instrumentality" and there was no testimony that any weapon was used to threaten Cool. (Id.) Petitioner concludes he was prejudiced because "[i]f the decision about whether to convict [him] would have had to be based entirely on Cool's testimony regarding threats, rather than the expanded offense that included actual violence, it is likely the jury might have come to a different conclusion." (Id.)

After identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the Circuit Court addressed the above issue, in pertinent part, as follows:

> 77.    Here, no fatal variance existed between the robbery count as charged and the proof adduced at trial. The State did not engage in a "constructive" amendment to the indictment. Although counsel did testify that perhaps he should have addressed any issues with the indictment but simply missed them, this Court does not find counsel to be ineffective as to this issue. Even assuming that counsel's performance regarding the indictment was objectively deficient, the failure to raise any concerns about the indictment did not prejudice Petitioner. Even had the Court ruled the indictment to be deficient in any way, the State could have easily presented the case to the grand jury once again or been given leave to add the words "by violence to the person." Counsel testified that he and Petitioner knew that he

was charged with accomplishing the robbery by beating the victim. The defense was in no way hampered. The indictment was sufficient to protect Petitioner against double jeopardy. Petitioner has failed to satisfy the prejudice prong of *Strickland/Miller*.

78.    Trial counsel was not constitutionally ineffective for failing to object to such alleged "constructive" amendment. No constructive amendment of the indictment occurred, nor did any variance between the indictment and proof adduced at trial.

(Document No. 10-10, p. 41.) After identifying the <u>Strickland</u> standard and the equivalent West Virginia authority as the applicable precedent, the SCAWV addressed the issue, in pertinent part, as follows:

Based on our review of the record in appeal, the parties' arguments, and the circuit court's order, we agree with the circuit court that any difference between the allegations in the indictment and the evidence at trial did not mislead petitioner, subject him to any additional burden of proof, or otherwise prejudice him and so was an amendment of form, only. ("An 'amendment of form' which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is no subjected to any added burden of proof, and is not otherwise prejudiced." Syl. Pt. 3, in part, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).)

The indictment informed petitioner that he was charged with first degree robbery, West Virginia Code § 61-2-12(a) (2000). The indictment also informed petitioner that he was charged with assault during the commission of a felony, § 61-2-10 (1882), so he was aware that the State planned to present evidence of bodily harm to the victim. For the same reason, any difference between the indictment and evidence offered at trial did not subject petitioner to any added burden of proof. Finally, petitioner's trial counsel testified repeatedly during the omnibus hearing that the defense to the robbery charge was that petitioner did not steal, take away, or carry $103 from Ms. Cool's apartment, i.e., that the robbery did not occur, at all. So, the means by which petitioner accomplished the robbery (by threat of force or the commission of violence) was irrelevant to the defense theory. Any difference between the robbery count in the indictment and the State's evidence at trial resulted in, at most, an amendment of form – rather than an impressible constructive amendment – to the first degree robbery count of the indictment.

(Document No. 10-11, p. 4.)

First, Petitioner does not dispute that the Circuit Court and the SCAWV correctly referenced the <u>Strickland</u> standard as applicable law to Petitioner's ineffective assistance of

counsel claim. Petitioner, however, argues that the Circuit Court and the SCAWV unreasonably applied <u>Strickland</u> to the facts of his case. Considering what arguments or theories supported, or could have supported the Circuit Court's and the SCAWV's decisions, the undersigned finds that fairminded jurists could disagree that those arguments or theories are inconsistent with existing law. As stated above, the Circuit Court and the SCAWV determined that Petitioner was not prejudiced by trial counsel's failure to object because (1) even if a variance occurred, the State "could have easily presented the case to the grand jury once again or been given leave to add the words 'by violence to the person'" and (2) "[a]ny difference between the robbery count in the indictment and the State's evidence at trial resulted in, at most, an amendment of form." The Circuit Court noted that during the omnibus hearing, trial counsel "did testify that perhaps he should have addressed any issues with the indictment but simply missed them." (Document No. 10-10.) The Circuit Court concluded that "[e]ven assuming that counsel's performance regarding the indictment was objectively deficient, the failure to raise any concerns about the indictment did not prejudice Petitioner" "because "the State could have easily presented the case to the grand jury once again or been given leave to add the words 'by violence to the person.'" (<u>Id.</u>) The undersigned finds that the Circuit Court's finding that "the State could have easily presented the case to the grand jury once again or been given leave to add the words 'by violence to the person,'" was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

As to the Circuit Court's finding that the State "could have easily . . . been given leave to add the words 'by violence to the person'" to the Indictment, the undersigned finds that such a finding involved an unreasonable application of clearly established Federal law. The Fifth

Amendment provides that "[n]o person shall be held to answer for a capital, other otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. Additionally, "it is 'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." United States v. Moore, 810 F.3d 932, 936 (4th Cir. 2016)(citing United States v. Whitfield, 695 F.3d 288, 309 (4th Cir. 2012)). The State's desire to alter or broaden the charges set out in Petitioner's indictment to include the additional element of "by violence to the person" was within the province of the grand jury. See Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 9 L.Ed.2d 240 (1962)(unless the change is merely a matter of form, an indictment may not be amended except by resubmission to the grand jury). Thus, the Circuit Court's conclusion that Petitioner was not prejudiced by trial counsel's failure to object to constructive amendment because the State "could have easily . . . been given leave to add the words 'by violence to the person'" was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

As to the Circuit Court's finding that "the State could have easily presented the case to the grand jury once again," the undersigned finds that such a finding involved an unreasonable application of clearly established Federal law. The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides that no person shall be "subject for the same offense to be twice in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause further "embraces the defendant's 'valued right to have his trial completed by a particular tribunal." Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In a jury trial, jeopardy attaches when the jury is empaneled. Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); United States v. Shafer, 987 F.2d 1054,

1047 (4th Cir. 1993). Once a jury is empaneled, "the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." Shafer, 987 F.2d at 1047. A retrial, however, may occur when a mistrial is properly granted. Arizona, 434 US. at 505, 98 S.Ct. at 824. When a defendant opposes a mistrial, the mistrial must be justified by showing a "manifest necessity" or that the ends of justice would be defeated if a mistrial were not granted. Id. Although the term "manifest necessity" does not require that "a mistrial be 'necessary' in the strictest sense of the word, it does require a 'high degree' of necessity." Gilliam, 75 F.3d at 895; also see Arizona, 434 US. at 506, 98 S.Ct. at 831. A clear example of "manifest necessity" is when a jury is unable to reach a verdict. Gilliam, 75 F.3d at 895. On the other extreme, wherein there is a lack of "manifest necessity," is when a prosecutor seeks a mistrial to obtain additional time to arrange for evidence to strengthen the case against the defendant. Id.; also see Arizona, 434 at U.S. at 508, 98 S.Ct. at 832(explaining that strict scrutiny should be applied when the basis for a mistrial is unavailability of critical prosecution evidence because the Double Jeopardy Clause is meant to protect a criminal defendant from multiple prosecutions where the prosecutor seeks a mistrial to "afford the prosecution a more favorable opportunity to convict the defendant."); Seay, 927 F.3d 781-83 (applying the strictest scrutiny standard of review, the court determined the district court erred in failing to grant *habeas* relief on petitioner's double jeopardy claim where the state court granted the prosecution's request for a mistrial based on the unavailability of the government's witness); Colvin v. Sheets, 598 F3d 242, 253 (6th Cir. 2010)(Reviewing courts apply a "sliding scale of scrutiny" concerning manifest necessity: the strictest scrutiny applies when the basis of the mistrial is judicial or prosecutorial misconduct, and the greatest deference extends to mistrials declared due to a deadlocked jury.). Between these two extremes "exists a spectrum of trial errors

and other difficulties, some creating manifest necessity for a mistrial and others falling far short of justifying a mistrial." Gilliam, 75 F.3d at 895.

At the time the alleged fatal variance became an issue in Petitioner's underlying jury trial, jeopardy had clearly attached. Specifically, the alleged fatal variance did not occur until evidence was presented at Petitioner's jury trial and the Circuit Court's gave the jury instruction on the first-degree robbery offense. The Circuit Court's finding that "the State could have easily presented the case to the grand jury once again" is contrary to clearly established federal law. The Circuit Court did not consider or find that a "manifest necessity" for the granting of a mistrial could be established based solely on a prosecutor's desire to return to the grand jury to reindict a defendant. Allowing a defendant to be placed in jeopardy by the empanelment of a jury, the government to present evidence to the jury that ultimately does not support the charges contained in the indictment, and then grant a mistrial for the sole purpose of allowing the prosecutor to return to the grand jury to reindict a defendant on charges that match the evidence presented at trial, is exactly what the Double Jeopardy Clause is meant to prevent. Thus, the Circuit Court's conclusion that Petitioner was not prejudiced by trial counsel's failure to object to constructive amendment because "the State could have easily presented the case to the grand jury once again," was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Next, the undersigned considers what arguments or theories supported, or could have supported the SCAWV's decision that Petitioner was not prejudiced by trial counsel's failure to object to constructive amendment because "[a]ny difference between the robbery count in the indictment and the State's evidence at trial resulted in, at most, an amendment of form."

34

(Document No. 10-11, p. 4.) The SCAWV reasoned that Petitioner was not subjected to "any added burden of proof" because the indictment charged Petitioner with first-degree robbery in violation of W.Va. Code § 61-2-12(a) <u>and</u> assault during the commission of a felony in violation of W.Va. Code § 61-2-10. (<u>Id.</u>) The SCAWV reasoned that Petitioner "was aware that the State planned to present evidence of bodily harm to the victim" based upon the charge for assault during the commission of a felony. (<u>Id.</u>) Finally, the SCAWV reasoned that the alleged constructive amendment was irrelevant to Petitioner's defense because trial counsel testified that Petitioner's defense to the first-degree robbery charge was that the robbery never occurred. (<u>Id.</u>) The SCAWV, therefore, concluded that "the means by which petitioner accomplished the robbery (by threat of force or the commission of violence) was irrelevant to the defense theory." (<u>Id.</u>) The undersigned finds that fairminded jurists could disagree as to whether the above arguments or theories are inconsistent with existing law.

As state above, the Fifth Amendment of the United States Constitution provides that "[n]o person shall be held to answer for a capital, other otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. "[I]t is 'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." <u>Moore</u>, 810 F.3d at 936(<u>citing</u> <u>Whitfield</u>, 695 F.3d at 309); <u>Cole v. Arkansas</u>, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)(finding that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge" are "among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal"). "An impermissible constructive amendment – also referred to as a 'fatal variance' – occurs when the government, usually through its presentation of evidence or argument,

or the district court, usually through its jury instructions, 'broadens the possible bases for conviction beyond those presented by the grand jury." Id.; also see Dunn v. United States, 442 U.S. 100, 105, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)(a "variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment"); United States v. Holmes, 376 Fed.Appx. 346, 348 (4th Cir. 2010(quoting United States v. Foster, 507 F.3d 233, 242 (4th Cir. 2007)(internal quotations and citation omitted)("A constructive amendment to an indictment occurs when . . . the court (usually through its instructions to the jury) . . . broadens the possible bases for conviction beyond those presented by the grand jury, which results in a fatal variance [] because the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."). "The grand jury must have indicted for the crime actually proved." United States v. Johnson, 2017 WL 2531582, * 10 (S.D.W.Va. June 9, 2017)(citation omitted). Thus, a fatal variance in violation of the Fifth Amendment occurs "when the indictment is effectively altered 'to change the elements of the offense charged, such that a defendant is actually convicted of a crime other than that charged in the indictment." United States v. Banks, 29 F.4th168, 174 (4th Cir. 2022)(citations omitted). Thus, the Court must consider whether a defendant was tried on charges different from those listed in the indictment. United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013); United States v. Ashley, 606 F.3d 135 (4th Cir. 2010)("To constitute a constructive amendment, the variance must in essence 'change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."). The Fourth Circuit has explained that when a constructive amendment claim is based on allegedly erroneous jury instructions a reviewing court should consider the following:

> When a constructive amendment claim rests on allegedly erroneous jury instructions, a reviewing court is to consider the totality of the circumstances – including not only the instructions and the indictment but also the arguments of the parties and the evidence presented at trial – to determine whether a jury could have "reasonably interpreted" the challenged instructions as "license to convict" on an unindicted charge. *Lentz*, 524 F.3d at 514-15. If not – if a reasonable jury, in light of the full context, would have thought that it was permitted to convict on a ground not included in the indictment – then no constructive amendment has occurred. *Id.* at 515-16.

Moore, 810 F.3d at 936.

"[N]ot all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment." Randall, 171 F.3d at 203. A non-fatal "variance occurs when the facts proven at trial support a finding that defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed." United States v. Floresca, 38 F.3d 706, at 709 (4th Cir. 1994)(en banc), abrogated on other grounds by, United States v. Banks, 29 F.4th 168 (4th Cir. 2022); also see United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996)("As long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible.") Thus, a mere variance occurs "[w]hen different evidence is presented at trial but the evidence does not alter the crime charged in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999); also see Banks, 29 F.4th at 173-80(finding no constructive amendment based upon the court's inclusion of "or distributed" in the jury instructions for the possession with intent to distribute charge where a jury could not have found defendant guilty of only distribution and not possession with intent to distribute); Redd, 161 F.3d at 795(no constructive amendment where an indictment charged the defendant with bank

robbery and use of a firearm during a crime of violence, and provided the use of a firearm different than the firearm described in the indictment – a "black revolver" verses a "silver-colored handgun"); United States v. Robles-Vertiz, 155 F.3d 725 (5th Cir. 1998)(the use of the incorrect name of an alien in an indictment charging the transporting of an alien to the United States did not constitute a constructive amendment); United States v. Moss, 2018 WL 6834708, * 4 - 5 (N.D.W.Va. Dec. 21, 2018)(since dates are not elements of a crime, a mere variance occurs). A variance does not constitute a Fifth Amendment violation "unless it prejudices defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to danger of a second prosecution of the same offense. Id.

The United States Supreme Court's decision in Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) and the Fourth Circuit's decisions in United States v. Holmes, 376 Fed.Appx. 346 (4th Cir. 2010) and United States v. Perry, 560 F.3d 246 (4th Cir. 2009) are instructive. In Stirone, the Supreme Court held that a constructive amendment occurred where the indictment charged the defendant with Hobbs Act extortion based on the interference with commerce in sand, but the evidence a trial and the jury instructions allowed the jury to convict based on the interference with commerce in sand and steel. Stirone, 361 U.S. at 218-19, 80 S.Ct. 270. The Supreme Court explained that "the indictment here cannot fairly be read as charging interference with movement of steel . . . [a]nd it cannot be said with certainty that with a new basis for conviction added, [defendant] was convicted solely on the charge made in the indictment the grand jury returned." Id. The Supreme Court determined that the admission of evidence concerning interference with steel to be "neither trivial, useless, nor innocuous" because it allowed a conviction for a separate offense not charged in the indictment - - a Hobbs Act violation based on

the interference with commerce in steel. Id.

In Holmes, the Fourth Circuit determined that court's instruction of the jury in the disjunctive that reflects the statute's disjunctive wording does not constructively amend the indictment when the indictment charges in the conjunctive. Holmes, 376 Fed.Appx. at 348. The indictment in Holmes charged the defendants with conspiring to "obstruct, delay, and affect commerce" by robbery in violation of 18 U.S.C. § 1951(a). Id. When instructing the jury, the court used disjunctive language that tracked the statutory language. Id. The Fourth Circuit determined that if a defendant is charged in the conjunctive, but the statutory language of the underlying offense is disjunctive, a court may properly instruct the jury in the disjunctive without constructively amending the indictment. Id. The Fourth Circuit reasoned that "[i]instructing otherwise would 'improperly add elements to the crime that are not contained in the statute itself.'" Id.(citing United States v. Montgomery, 262 F.3d 233, 242 (4th Cir. 2001). In Perry, the indictment charged the defendant in the conjunctive (both predicate offenses) placing the defendant on notice of the specific charges against him. Perry, 560 F.3d at 256. The Fourth Circuit noted that the court's disjunctive instruction as to the predicate offenses did not constitute a constructive amendment because the government was only required to prove a single offense pursuant to the statute. Id. The Fourth Circuit explained that "[t]he instruction did not broaden the possible bases for conviction beyond those presented in the indictment, or changed the elements of the offense charged so as to result in [defendant] being convicted of a crime different from that charged in the indictment." Id.

In Count Three of the Indictment, Petitioner was charged with first-degree robbery in violation of W. Va. Code § 61-2-12(a). The essential elements of first-degree robbery requires the State to prove the following: (1) the unlawful taking and carrying away, or the unlawful attempt

39

to take and carry away, (2) money or goods, (3) from the person of another or in his presence, (4) by violence or threat of deadly force by the presenting of a firearm or other deadly weapon, (5) with intent to steal the money or goods. Flack v. Ballard, 239 W.Va. 566, 803 S.E.2d 536 (2017); also see W. Va. Code § 61-2-12(a)("Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapons, is guilty of robbery in the first degree…."). West Virginia Code § 61-2-12(a) is disjunctive providing that first-degree robbery can be committed in two ways: (1) "committing violence to the person, including but not limited to, partial strangulation or suffocation or by striking or beating," or (2) "the threat of deadly force by presenting a firearm or other deadly weapon." W. Va. Code § 61-2-12(a). Count Three of the Indictment, however, charged Petitioner with a singular method of committing the first-degree robbery (by "the threat of deadly force"). (Document No. 40-1, p. 4.) At trial, the majority of the evidence presented focused on the fact that Petitioner punched Cool multiple times. Specifically, Cool testified that Petitioner punched her in the face, after which she fell to the floor and Petitioner "kept pounding" and "hit me so many times in my head I couldn't even think." (Document No. 40-2, pp. 110-12.) Cool also testified that while Petitioner was beating her, Petitioner said "I'm going to kill you" and that "if I told anybody, he would come back and kill me." (Id.) The State introduced photographs of Cool taken before she went to the hospital exhibiting her injuries and of Cool's apartment that showed blood in the apartment. (Document No. 40-3, pp. 51 and 53.) The States also introduced Petitioner's statement wherein he admitted to being at Cool's apartment and hitting her. Richardson, 2016 WL 5030312 at * 2. In its arguments to the jury, the State focused on Petitioner's

40

use of violence to support the first-degree robbery conviction. (Document No. 40-2, p. 93 and Document No. 40-3, pp. 186 and 204.) Importantly, the Circuit Court instructed the jury that the jury could find Petitioner guilty either because he employed "partial strangulation or suffocation or by striking or beating" or by the "presenting of firearms, or by other deadly weapon or instrumentality." (Document No. 40-3, p. 172.) Considering the Indictment and the Circuit Court's jury instruction concerning the first-degree robbery charge, the undersigned finds that the SCAWV's ruling on the constructive amendment claim is so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Although W. Va. Code § 61-2-12(a) is disjunctive providing that first-degree robbery can be committed in two ways (actual violence or threat of violence), the Indictment charged Petitioner with a singular method of committing the first-degree robbery (by "the threat of deadly force"). The method of committing the first-degree robbery is an essential element, and the Circuit Court's jury instruction concerning the charge did not track the Indictment. United States v. Figueroa, 66 F.2d 1375, 1379 (11th Cir. 1982)(indictment unconstitutionally amended where court permitted jury to convict of air piracy by threats or intimidation even though indictment charged piracy by force and violence); United States v. Bizzard, 615 F.2d 1080, 1082 (5th Cir. 1980)(indictment unconstitutionally amended where it charged that defendant committed bank robbery and put the life of tellers in jeopardy but conviction was for bank robbery accompanied by assault, different statutory section). The Circuit Court changed an essential element of the offense by instructing the jury that Petitioner could be convicted of first-degree robbery based upon his use of violence. Importantly, the Indictment did not charge Petitioner with committing first-degree robbery by the use of violence. Therefore, the Circuit Court's jury

instruction broadened the possible bases for Petitioner's conviction beyond those presented by the grand jury. This clearly constituted a fatal variance in violation of the Fifth Amendment and the SCAWV's finding that the foregoing was merely 'an amendment of form" is contrary to established Federal law. Furthermore, the SCAWV's determination that trial counsel's failure to assert such a meritorious claim did not result in prejudice is contrary to established Federal law. Had trial counsel objected to the constructive amendment to the indictment at trial, the error would have been "fatal and reversible per se." <u>Banks</u>, 29 F.4th at 177(<u>citing</u> <u>Whitfield</u>, 695 F.3d at 308)(if a defendant objects to a constructive amendment at trial, the alleged constructive amendment is not examined under plain error review); <u>also see</u> <u>United States v. Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)(<u>citing</u> <u>Stirone</u>, 361 U.S. at 214-19, 80 S.Ct. 272-74)(finding that violations of the Grand Jury Clause do not automatically require reversal, but distinguishing *Stirone* where reversal was proper because an objection to the fatal error had been made in the trial court). Although the SCAWV appears to place significant weight on the fact that trial counsel testified that Petitioner's defense was that Petitioner did not commit the robbery whether by threat or the use of violence, such defenses were not mutually exclusive. Asserting the above defense in no way prevented trial counsel from objecting to the fatal variance. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be denied as to the above claim and Petitioner's Amended Petition be granted as to the above claim.

**B.    Trial counsel's failure regarding Juror Hicks.**

In his Amended Petition, Petitioner argues that "[t]rial counsel was ineffective for failing "to properly probe the extent of Juror Hicks' relationship with a prosecutor, including exploring any social media connections." (Document No. 41, pp. 14 – 19.) In support, Petitioner

argues that he had a Sixth Amendment right to a trial by an impartial jury. (Id., p. 14.) Petitioner contends that Juror Hicks had an implied bias against him due to her "relationship" with Assistant Prosecutor Bailey. (Id., pp. 15 – 16.) Petitioner claims that during *voir dire*, trial counsel failed to thoroughly question Juror Hicks concerning her relationship with Assistant Prosecutor Bailey. (Id., p. 16.) Although *voir dire* revealed that Juror Hicks went to high school with Assistant Prosecutor Bailey, trial counsel did not question Juror Hicks concerning any social media connections. (Id.) Petitioner contends that such questioning would have revealed that Juror Hicks and Assistant Prosecutor Bailey were "Facebook friends." (Id.) Petitioner argues that discovery of the foregoing would have been a basis for striking Juror Hicks. (Id.) Petitioner asserts that at the time of his trial, "the importance of social media to criminal trials had been well established." (Id.) Specifically, Petitioner claims that the "prevailing professional norms . . . were that counsel needed to be aware of social media as a tool and its potential impact at *voir dire*" and Petitioner's trial counsel "did not meet that standard." (Id., p. 17.) Petitioner argues that he was prejudiced by trial counsel's failure to probe Juror Hicks on the nature of her relationship with Assistant Prosecutor Bailey in two ways. (Id.) First, Petitioner states "that Juror Hicks had a current, ongoing relationship with one of the prosecutors was a different fact in the exploration of bias than whether they had been friends years before." (Id.) Thus, Petitioner argues that a "juror sitting in judgment of a case presented by a current acquaintance raises the kind of implied bias concerns that are present if a family member of one of the parties is sitting on the jury." (Id.) Second, Petitioner states that "had trial counsel probed Juror Hicks (or otherwise researched her social medical presence) and discovered the relationship it would have suggest bias on her part." (Id.) Petitioner states that Juror Hicks' denial of any such relationship that she admitted years later is relevant to actual bias because

43

"dishonesty, of itself, is evidence of bias." (Id.) Petitioner states that either of the foregoing "could have provided a basis for challenging Juror Hicks for cause." (Id.) Finally, Petitioner argues that "[t]he presence of a prosecution-favorable juror in [Petitioner's] case was particularly prejudicial because the case against him on the most serious charge, first-degree robbery, rose and fell on whether the jury believed Cool." (Id., p. 18. ) Petitioner explains that "[w]hile the assault charge was supported by physical evidence and [Petitioner's] own statement, the gravamen of the robbery – that Cool's property was taken by [Petitioner] – could only be found beyond a reasonable doubt by the jury if they believed Cool." (Id.) Petitioner notes that Cool gave different testimony concerning the taking of the money and how it was taken at the initial interview with police, the preliminary hearing, and the jury trial. (Id.) Petitioner pointed out that it was Assistant Prosecutor Bailey that argued during closing statements that the jury should believe Cool in spite of her history of changing stories. (Id., p. 19.) Accordingly, Petitioner concludes that trial counsel was ineffective in his failure to adequately investigate and probe the nature of Juror Hicks' relationship with Assistant Prosecutor Bailey. (Id.)

In his Motion for Summary Judgment, Respondent argues that trial "counsel was not ineffective in failing to further inquire of Juror A.H. as Petitioner's claim that she had implied bias is baseless." (Document No. 42 and Document No. 44, pp. 18 – 22.) Respondent contends that Petitioner's foregoing claim fails because "there is no evidence the juror in question was anything other than a passing acquaintance of the assistance prosecuting attorney and acted as an unbiased juror." (Id., p. 18.) Respondent states that during *voir dire*, Juror Hicks admitted that the two attended the same high school but denied an ongoing personal relationship. (Id.) Respondent further asserts that Juror Hicks twice stated that she could be fair and impartial. (Id.) Respondent

notes that Petitioner relies upon a private correspondence initiated on his behalf where Juror Hicks indicated that Assistant Prosecutor Bailey "and I were acquaintances prior to the trial and were friends on Facebook at that time. To my knowledge I am not and was not friends with him on any other form of social media." (Id., pp. 18 – 19.) Respondent argues that Petitioner's claim that Juror Hicks "was somehow implicitly biased . . . has no support in fact or law in this case." (Id., p. 19.) Respondent states that "Petitioner points to no caselaw indicating that a juror who is a high school classmate and 'Facebook friend' who has no continuing relationship with the assistant prosecuting attorney, has not visited the attorney's home, and maintains that she could be unbiased somehow rises to the level of a juror who risks 'substantial emotional involvement.'" (Id.) Respondent further argues that "Petitioner claims baselessly that [Juror Hicks] was dishonest in her *voir dire* responses as she failed to disclose that she and the assistance prosecuting attorney were Facebook friends." (Id.) Citing Mascarella v. CPlace University SNF, LLC, 2015 WL 74322370 (M.D.La. Nov. 23, 2015), Respondent argues that a Facebook "friend" is not necessarily the same a friendship that might result in juror bias. (Id., pp. 20 – 21.) Respondent further contends that this "allegation of dishonesty is, at best, disingenuous on several levels" because Juror Hicks (1) "was clear that she knew the assistant prosecuting attorney from high school, (2) "was never asked, and thus, could not have been dishonest in answering, whether she was Facebook friends with him," (3) denied a continuing relationship with him, and (4) classified the assistant prosecutor as an acquaintance in her later correspondence. (Id., pp. 19 – 20.) Respondent argues that there has been no evidence of bias sufficient to strike Juror Hicks. (Id., p. 21.) Respondent, therefore, concludes that "the state court did not apply Strickland in an objectively unreasonable manner in finding that

there was no ineffective assistance of counsel regarding his *voir dire* of [Juror Hicks] as there is no possible prejudice to Petitioner." (Id.)

In Response, Petitioner argues "Juror Hicks' false answer during *voir dire* that she had no ongoing friendship with one of the prosecutors is sufficient to call her impartiality into question." (Document No. 46, pp. 5 - 7.) Petitioner continues to argue that Juror Hicks' "ongoing friendship" with Assistant Prosecutor Bailey "did not come to light until after [Petitioner's conviction, but could have been discovered by [Petitioner's] trial counsel who, in 2014, should have been aware of the role social media could play in jury selection." (Id., p. 6.) Petitioner states that "[b]y failing to follow up with Juror Hicks after she admitted knowing the prosecutor, [Petitioner's] trial counsel provided ineffective assistance of counsel." (Id.) Petitioner contends that the "ineffectiveness was prejudicial because the main charge against [Petitioner] – robbery – rose and fell on the credibility of Cool's testimony." (Id.) Petitioner again notes that Assistant Prosecutor Bailey "argued to the jury that it should believe Cool in spite of her history of changing stories." (Id., p. 7.) Petitioner concludes that "[i]f Juror Hicks gave the argument any additional weight, any benefit of the doubt, [Petitioner] was denied his right to an unbiased factfinder." (Id.)

The Circuit Court made the following findings of facts concerning the above issue:

33.    Jury selection revealed that one prospective juror, Ms. Hicks, had gone to high school with assistant prosecutor Bailey. Ms. Hicks nonetheless stated that she would be able to impartially consider the evidence and decide the case without regard to that relationship. She did not have an ongoing personal relationship with Bailey. Ms. Hicks had never visited his home, nor had he visited hers. Ms. Hicks stated she could decide the case based upon the evidence without regard to having gone to high school with the assistant prosecutor.

34.    Another juror was a friend of the family of the public defender Ms. Hasan, but stated that relationship would not affect any decision he made in the matter.

35.     Another juror was acquainted (favorably, it seems) with Petitioner, but also assured the Court that she would be impartial.

\* \* \*

152.    Trial counsel personally had "friends" on Facebook with whom he did not have a personal, or at least close, personal relationship. He did not strike Ms. Hicks from the jury because there were other jurors he thought needed to be removed more than Ms. Hicks.

\* \* \*

155.    Trial counsel had no reason to believe that Ms. Hicks (the foreperson) had been anything other than fair and impartial.

(Document No. 10-10, pp. 6 - 25.) After identifying the <u>Strickland</u> standard and the equivalent

West Virginia authority as the applicable precedent, the Circuit Court addressed the above issue,

in pertinent part, as follows:

65.     Trial counsel was not ineffective for failure to investigate the possible bias toward the State by a juror who went to high school with Mr. Bailey, one of the assistant prosecutors trying the case.

66.     There is no evidence in the trial record whatsoever to suggest that the juror and the assistant prosecutor had any contact with one another after high school. The prospective juror properly brought to the Court's attention that she had gone to high school with Mr. Bailey. The Court properly made inquiry about that relationship and any possible ongoing relationship or bias because of the coincidence that the two attended high school together.

67.     The prospective juror stated unequivocally that she would be able to listen impartially to the evidence and decide the case without regard to that relationship. She did not have an ongoing personal relationship with him and she had never visited his home, nor had he visited hers. She stated she could decide the case based upon the evidence, without regard to having gone to high school with the assistant prosecutor.

68.     Although the trial court testified that perhaps he should have inquired about social media, Petitioner had not proven that in fact the juror and Mr. Bailey were social media "friends." Petitioner states they were, but provided no documentary evidence nor testimony other than his own to show the two had any social medica relationship.

69.  This Court, however, decides the issue under the assumption that the assistant prosecutor and jury foreperson were Facebook "friends."

70.  A criminal defendant is not entitled to a jury comprised of individuals who have never met any of the participants in the case. He is entitled to a jury that is free from partiality . . . .

***

71.  The juror's response that she had gone to high school with Mr. Bailey was not a clear statement of bias. The mere acquaintance between the two might have indicated the possibility of bias. The trial court then properly questioned the prosecutive juror to determine whether or not actual bias or prejudice existed by the use of neutral questions not seeking a specific response nor questions that sought to rehabilitate the prospective juror.

72.  She was asked whether her acquaintance with Mr. Bailey would tend to color her vision of the case. She unequivocally stated no. She said she had never visited with him in his home, nor had he been to her home. She unequivocally stated that she would decide the case based on the law and evidence. The questions and answers determined that she was free from bias and was completely impartial. There were no other questions to be asked by the State nor defense counsel.

73.  Petitioner has not demonstrated that the juror was biased against Petitioner, nor has he demonstrated even the potential for bias as there is no evidence to refute the juror's unequivocal statement that she was impartial.

74.  As the juror was completely impartial and no further investigation into her partiality or lack thereof would have been undertaken by an objectively reasonable practitioner, this contention affords Petitioner no relief. Moreover, Petitioner has failed to demonstrate that, in fact, the juror was not impartial so that the outcome of the trial would differ had she not been a juror. Petitioner satisfies neither prong of *Strickland/Miller* and this contention affords Petitioner no relief.

75.  Again, Petitioner was entitled to an impartial jury, not one partial to him and or against the State. The purpose of *voir dire* is to obtain a panel of jurors free from bias or prejudice. "The true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had."

76.  Petitioner has not demonstrated that the jurors who tried him – specifically

the juror foreperson – were anything other than free from bias or prejudice. Trial counsel was no ineffective during the *voir dire*, and this contention affords Petitioner no relief.

(Document No. 10-10, pp. 38 - 40.) After identifying the <u>Strickland</u> standard and the equivalent West Virginia authority as the applicable precedent, the SCAWV adopted and incorporated the Circuit Court's findings and conclusions in affirming the Circuit Court's decision. (Document Nos 10-11, pp. 4 – 5.) Specifically, the SCAWV stated, in pertinent part, as follows:

> Here, the circuit court applied an objective standard to determine that counsel's performance was not outside the broad range of professionally competent assistance and that even if it had been, the results of petitioner's trial would not have been different. Upon review of the record on appeal, the parties' arguments, and the circuit court's order, we find that the circuit court did not err in concluding that petitioner had not satisfied the two-prong test of *Strickland v. Washington*. *See* Syl. Pt. 5, *Miller* at 3, 459 S.Ed.2d at 114.
>
> Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our own review of the record and the parties' briefs supports the circuit court's decision to deny petitioner habeas relief based on the assignments of error presented on appeal. As we stated above, the circuit court's order contains detailed findings of fact and conclusions of law as to the errors raised before the circuit court and again on appeal. In light of our conclusions that the circuit court's order and the record before us disclose no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignment of error raised herein and direct the Clerk to attach a copy of the circuit court's October 23, 2018, "Final Order" to this memorandum decision.

(<u>Id.</u>)

The Sixth Amendment, made applicable to the State through the Fourteenth Amendment, affords an accused the right to a trial by an impartial jury. The "touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 554 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)(citation omitted). The United States Supreme Court has explained that *voir*

*dire* examination serves to protect the foregoing right "by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." Id., 646 U.S. at 554, 104 S.Ct. 845. The Supreme Court, however, recognized the following:

> To invalidate the result of a three-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.

Id., 646 U.S. at 555, 104 S.Ct. 845. The Supreme Court, therefore, held that for an accused to obtain a new trial based upon a claim of jury impartiality, the accused "must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id., 646 U.S. at 556, 104 S.Ct. 845. The Supreme Court recognized that even though "motives for concealing information may vary, . . . only those reasons that affect a juror's impartiality can truly be said to affect the fairness of trial." Id.; also see Conaway v. Polk, 453 F.3d 585 (4th Cir. 2006)("The inquiry into whether a trial's fairness was affected essentially constitutes a third part, however, as it must be satisfied before the juror's bias may be proven.")

The Fourth Circuit has recognized that the McDonough test applies "equally to deliberate concealment and to innocent non-disclosure." Conner v. Polk, 407 F.3d 198, 205 (4th Cir. 2005). Regarding the second prong of the McDonough test, "'[t]he category of challenges for cause is limited,' and traditionally, a challenge for cause is granted only in the case of actual bias or implied

bias." <u>Jones v. Cooper</u>, 311 F.3d 306, 312 (4th Cir. 2002); <u>also see</u> <u>Person v. Miller</u>, 854 F.2d 656, 664 (4th Cir. 1988)("Challenges for cause are typically limited to situations where actual bias is shown.") To establish actual bias, a party must prove that a juror was not "capable and willing to decide the case solely on the evidence before [him or her]." <u>McDonough</u>, 464 U.S. at 554, 104 S.Ct. at 845. Implied bias "is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." <u>See Person v. Miller</u>, 854 F.2d 656, 664 (4th Cir. 1988), <u>citing</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 221-24, 102 S.Ct. 940, 948-50, 71 L.Ed.2d 78 (1982). Examples of implied bias include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." <u>Conner</u>, 407 F.3d at 206, <u>citing</u> <u>Smith</u>, 455 U.S. at 222, 102 S.Ct. at 949.

Considering the first <u>McDonough</u> factor, the undersigned finds that Juror Hicks did not fail to answer honestly a material question on *voir dire*. During *voir dire*, Juror Hicks was questioned as follows:

| | |
|---|---|
| JUSTIN COLLIN: | Good morning, everyone. My name is Justin Collin. This is my co-counsel, Iram Hasan. And together we represent Raymond Richardson. Raymond goes by "Dre." That's what most people call him. And I don't think we'll be calling any witnesses today. |
| THE COURT: | All right. |
| JUSTIN COLLIN: | Is anyone acquainted with, first of all, any of the lawyer in this case, has a personal or business relationships with any of them? |

|  | All right, we have a couple of jurors. You are Ms. Hicks? |
|---|---|
| JUROR HICKS: | Uh-huh. I went to high school with James. |
| THE COURT: | All right. Do you have an ongoing personal relationship with him? |
| JUROR HICKS: | No. |
| THE COURT: | Have you visited in each other's homes? |
| JUROR HICKS: | No. |
| THE COURT: | Would you be able to listen fairly and impartially to the evidence in this case? |
| JUROR HICKS: | Yes, I believe I would. |
| THE COURT: | And decide this case based on the evidence and without regard to your having gone to school with James? |
| JUROR HICKS: | Yes, I believe I would. |

(Document No. 40-2, pp. 41 – 42.) Thus, Juror Hicks responded that she was acquainted with Assistance Prosecutor Bailey because they went to high school together, but she denied having any ongoing personal relationship. Juror Hicks was never specifically asked if she was "friends" with Assistance Prosecutor Bailey on social media. Although Petitioner attaches an Exhibit wherein Juror Hicks acknowledges she was "friends" with Prosecutor Bailey on Facebook, she continues to indicate that he was an acquaintance and there was no ongoing personal relationship. (Document No. 1-4, p. 23.)("James and I were acquaintances prior to the trial and were friends on Facebook at that time. To my knowledge I am not and was not friends with him on any other form of social media.") Thus, the undersigned cannot find that Juror Hicks failed to honestly answer a material question on *voir dire*. For purposes further consideration of the <u>McDonough</u> test, the

undersigned will assume that Juror Hicks' failure to disclose her status as a Facebook "friend" as a personal relationship constitutes an "innocent non-disclosure." Conner, 407 F.3d at 205.

Regarding the second McDonough factor, Petitioner must show that a correct response would have provided a valid basis for a challenge for cause. The undersigned, therefore, will consider whether actual or implied bias existed on the part of Juror Hicks. The undersigned has thoroughly reviewed the record and cannot find that the SCAWV's finding of no actual or implied bias was contrary to a reasonable application of Federal law, or based on an unreasonable determination of facts. Whether a particular juror is impartial is a question of fact, subject on a *habeas* petition to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). It is well recognized that the trial court was in the best position to assess the demeanor and weigh the credibility of the juror in question. Patton v. Yount, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)("Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying . . . Demeanor, inflection, the flow of questions and answer can make confused and conflicting utterance comprehensible."); Wainwright v. Witt, 469 U.S. 412, 426 (1985)(since the trial court "sees and hears the juror," the trial court's credibility determination is entitled to "special deference"). The Circuit Court determined there was absolutely no evidence to suggest that Juror Hicks and Assistant Prosecutor Bailey had any ongoing personal relationship with one another after high school besides merely acquaintances. Juror Hicks acknowledged that she had never visited Assistant Prosecutor Bailey's home, nor had he visited hers. Furthermore, Juror Hicks unequivocally stated that she would be able to listen impartially to the evidence and decide the case without regard to having gone high school with the assistant prosecutor.

Next, the undersigned will consider whether an implied bias existed. Although the record reveals that Juror Hicks was Facebook "friends" with Assistant Prosecutor Bailey at the time of the criminal case, such alone does not establish an implied bias. As stated above, implied bias "is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." The State court determined that evening assuming Juror Hicks was Facebook "friends" with Assistant Prosecutor Bailey, such did not constitute an implied bias. The State Court reasoned that "a criminal defendant is not entitled to a jury comprised of individuals who have never met any of the participants in the case." See United States v. Davis, 306 F.3d 398, 419 (6th Cir. 2002)(There "is no constitutional prohibition in jurors simply knowing the parties involved . . . .'"), cert. denied, 537 U.S. 1208, 123 S.Ct. 1280, 154 L.Ed.2d 1054 (2003). Additionally, the undersigned's review of the record fails to indicate that the fact that Juror Hicks was a Facebook "friend" of the assistance prosecutor rose to the level of extreme and exceptional cases where bias is conclusively implied. See Treesh v. Bagley, 612 F.3d 424, 437-38 (6th Cir. 2010)(bias is not implied where a juror had taken a student-teacher relationship with the prosecutor); Ross v. Petro, 2020 WL 1550878, * 12 (N.D.Oh. April 1, 2020)("The affidavit from Ross's father established only that, on the day after the verdict had come in, he had seen a picture of the foreperson identified as a friend on the [victim's] page. With no evidence to show that the juror had 'liked' the page during trial, it was not unreasonable for the state court to refuse to speculate that the foreperson had, in violation of her oath, showed bias or partiality against Ross (and in favor of the victim) by 'liking' the page during the trial.")

Additionally, the undersigned finds that <u>Mascarella v. CPlace University SNF, LCC</u>, is instructive

on the above issue explaining as follows:

> But "friendships" on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during *voir dire*. The degree of relationship between Facebook "friends" varies greatly, from passing acquaintanceships and distant relatives to close friends and family. The mere status of being a "friend" on Facebook does not reflect this nuance and fails to reveal where in the spectrum of acquaintanceship the relationship actually falls. Facebook allows only one binary choice between two individuals where they either are "friends" or are not "friends," with no status in between.

> Indeed, some people have thousands of Facebook "friends," ... which suggests that many of those relationships are at most passing acquaintanceships. This is further complicated by the fact that a person can become "friends" with people to whom the person has no actual connection, such as celebrities and politicians. Thus, a Facebook member may be "friends" with someone in a strictly artificial sense.

<u>Mascarella v. CPlace University SNF, LLC</u>, 2015 WL 74322370, * 3 (M.D.La. Nov. 23,

2015)(<u>citing</u> <u>Sluss v. Commonwealth of Kentucky</u>, 381 S.W.3d 215 (Ky. 2012)). In the instant

case, there is absolutely no evidence that the Juror Hicks' status as a Facebook "friend" of Assistant

Prosecutor Bailey was any more than a mere acquaintance. Juror Hicks testified that she had no

personal relationship with Assistant Prosecutor Bailey nor had either one visited the others home.

Finally, Petitioner fails cite any Supreme Court precedent recognizing implied bias based on the

foregoing circumstances. Accordingly, the undersigned finds no implied bias on the part of Juror

Hicks. The undersigned, therefore, finds Petitioner cannot satisfy the second prong of the

<u>McDonough</u> test because Petitioner has failed to show that a correct response would have provided

a valid basis for a challenge for cause. Based upon the foregoing, the undersigned finds that

Petitioner fails to satisfy the <u>McDonough</u> test. Thus, the undersigned finds that Petitioner has failed

to demonstrate that he suffered any prejudice due to trial counsel's alleged ineffectiveness in

questioning Juror Hicks.

Based upon the foregoing, the undersigned finds that the State court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to the above claim of ineffective assistance of counsel.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT in part and DENY in part** Respondent's Motion for Summary Judgment (Document No. 42) and Petitioner's Amended Section 2254 Petition (Document No. 40). Concerning Petitioner's claim of ineffective assistance of counsel concerning Juror Hicks, the undersigned recommends that Respondent's Motion for Summary Judgment (Document No. 42) be **GRANTED** and Petitioner's Amended Section 2254 Petition (Document No. 40) be **DENIED**. Concerning Petitioner's claim of ineffective assistance of counsel concerning the constructive amendment of the indictment, the undersigned recommends that Respondent's Motion for Summary Judgment (Document No. 42) be **DENIED** and Petitioner's Amended Section 2254 Petition (Document No. 40) be **GRANTED**.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of

this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same Petitioner and to counsel of record.

Dated: June 2, 2022.



Omar J. Aboulhosn
United States Magistrate Judge